IN RE APPLICATION OF HOWARD MCLEAN COMPANY. HOWARD MCLEAN COMPANY, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, NOW KNOWN AS BURLINGTON NORTHERN, INC., ET AL., APPELLANTS.

187 N. W. 2d 300

Filed May 21, 1971. No. 37827.

Mason, Knudsen, Berkheimer & Endacott, for appellant Chicago, Burlington & Quincy Railroad.

Nelson, Harding, Marchetti, Leonard & Tate and J. Max Harding, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

Applicant charges protestants with the maintenance of discriminatory railroad freight rates pertaining to the shipment of potatoes from the Scottsbluff-Mitchell area to Omaha. The Nebraska State Railway Commission found in favor of applicant and ordered a reduction in rates. We affirm the order of the Nebraska State Railway Commission.

Applicant is a dealer in potatoes with large storage facilities in Scottsbluff and Mitchell, Nebraska. Ninety percent of his potatoes are shipped to Omaha, Nebraska, and about 80 percent of this movement is by truck due to a lack of proper railway cars and cheaper truck rates. This area is served by protestant Burlington Northern Railroad, as is also the Chadron, Hemingford, and Alliance, Nebraska, area. Protestant Union Pacific Railroad Company has a line serving Gering, Nebraska, and cars may be switched at Northport from one line to the other.

Single line mileages on the Burlington Northern and joint line on the Union Pacific to Omaha are as follows:

|            | Single | Joint |
|------------|--------|-------|
| Hemingford | 435.6  | 432   |
| Alliance   | 416.5  | 413   |
| Scottsbluff| 481.8  | 442   |
| Mitchell   | 491.2  | 452   |
| Chadron    | 441.9  | 442   |

Present rates per hundred are 35 cents from Hemingford and 43 cents from Scottsbluff. Increases to 37 cents and 46 cents respectively are contemplated. The record indicates that considering differences in distance, rates on potatoes shipped from Idaho to Omaha are proportionately less. Rates were lowered several years ago in the Hemingford area to meet truck competition and, thereafter, competition from the Chicago and Northwestern Railroad. It is undisputed that the truck competition is greater in the Scottsbluff-Mitchell area. It is also undisputed that by the short or joint-line route, additional switching expense of about 3 cents per hundred pounds would be encountered.

It is apparent that protestants' excuse that lower rates in the Hemingford area were justified originally by truck competition is not a valid one as the same competition is greater in the Scottsbluff area. It is also apparent that on a mileage basis, present rates discriminate in favor of the Hemingford area. The Burlington Northern has a choice of handling shipments from the Scottsbluff area direct over the longer route on its own line or making use of short or joint-line facilities with the additional switching expense. A differential in rates between Hemingford and Scottsbluff in excess of 3 cents per hundred pounds would not appear to be warranted. The order of the commission does not allow for any differential whatever but institutes similar rates, i.e. 35 cents, for both areas.

It appears that the existing 8 or 9 cent differential is unjustified and discriminatory. Protestants insist that

the 35 cent rate from Scottsbluff is noncompensatory. The evidence appears to bear this out, but it has not been shown that the same rate installed at Hemingford is compensatory. The circumstances appear to be substantially similar. The lowest rates published or charged, for substantially the same kind of service, are prima facie evidence of a reasonable rate for the services under investigation. See § 75-123, R. R. S. 1943.

Protestants contend that the Nebraska State Railway Commission is without power to fix joint-line rates. Such is not necessarily a result of the order entered but the question may well be considered. Article IV, section 20, Constitution of Nebraska, provides: "* * * The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision." There being no specific legislation to the contrary, this provision is sufficiently broad to authorize the fixing of joint-line rates. In addition, section 75-118, R. R. S. 1943, provides that the commission shall have power to: "(1) Fix all necessary rates, charges and regulations governing and regulating the transportation, storage, or handling of freight and passengers by any common carrier in Nebraska intrastate commerce; * * *." In view of the foregoing, we are inclined to believe that the commission is empowered to fix joint-line rates.

Discrimination in freight rates is forbidden by section 75-126, R. S. Supp., 1969. "In the fixing of rates, the railroads may not give any undue preference or advantage to any particular person or locality, or subject any particular description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. * * * .

"Railroads may not reduce rates to meet competition at one point and refuse to meet it at other points where

the circumstances are substantially similar." United Mineral Products Co. v. Nebraska Railroads, 175 Neb. 285, 121 N. W. 2d 492.

There is substantial evidence in the record to sustain the commission's finding of discrimination. This being the fundamental issue presented, we are unable to hold that the order entered is arbitrary or unreasonable. On appeal from an order of the Nebraska State Railway Commission fixing rates for common carriers, the only questions for determination are whether or not the commission acted within the scope of its authority and whether or not the order entered is reasonable and not arbitrarily made. See, Nebraska Limestone Producers Assn. v. All Nebraska Railroads, 168 Neb. 786, 97 N. W. 2d 331; United Mineral Products Co. v. Nebraska Railroads, *supra.*

The order of the Nebraska State Railway Commission is affirmed.

AFFIRMED.